in her official capacity as Principal Deputy Director at the United States Fish and Wildlife Service, an agency of the United States Department of Agriculture and Fisheries. Mr. Anderson, for the balance. Mr. Gurney, for the appellate. Good morning. Good morning, Your Honors. May it please the Court, Christopher Anderson for the Fish and Wildlife Service. I'd like to begin by addressing the timeliness of the appeal and then move to the merits. On timeliness, the July summary judgment order was not a final decision and did not start the appeal clock running. And I think the easiest way to see that it was not a final decision was that the District Court had not finished with its proceedings on the remand. A decision is not final and appealable until the District Court has finished its consideration of the case. That is the lesson of this Court's decision in St. Mark's and the Supreme Court's decision in Schaefer Brewing. Plainly, Judge Contreras was not finished with the case when he entered the July order because he ordered the parties to confer and submit proposals on the remand and he contemplated entering a further order in the case. The July order was also not final because it did not finally determine the remedy. As we explained in our brief, the parameters and schedule of any remand order are material parts of the remedy and they very much bear on an agency's decision regarding whether and what to appeal. Can I ask you, just pivot to the merits and ask you, has the service ever argued in any other case that Section 4E does not allow it based on the similarity of appearance to apply 4E to a species already determined to be threatened under 4A and so treat it as if it were endangered? Have you taken that position in another case? The service has not taken that position in another case because this question has never arisen in a judicial case before as far as I was able to tell through my research. But the service did in its regulation, which it promulgated in the early 70s, mid-70s, interpret Section 4E to only apply to species which are not listed as endangered or threatened. I would say that, but to me, actually reading, I may be missing something, which is why we have oral argument. The regulation actually seems even more amenable to being read the way plaintiffs read the statute, the way Friends of Animals reads the statute, than the statute itself. I'm not sure how you get, because it doesn't have the same unlisted... Well, it does. 50 CFR Section 1750 says, whenever a species which is not endangered or threatened closely resembles an endangered or threatened species. Right. And given that the statute has sort of two circumstances, it can be a threatened species or it can be an endangered species, why don't we understand that as speaking sort of separately to the two distinct levels that would otherwise be applicable? It just seems like at least the statute is ambiguous. It's basically saying, it's giving authority. One way of reading it is it gives the regulation and the statute is giving authority to the service to treat any species as endangered, even though it is not listed as endangered. And it gives the service the authority to treat any species as threatened, even though it is not listed as threatened pursuant to 4A. So that's one way to read it, to say it's not listed as such. You know, you could treat as endangered, even though it's not listed as such. Treat as threatened, even though it's not listed as such. What about the language of either the rule or the statute forecloses that reading? So I think that reading is most clearly foreclosed by the text of the statute in paragraphs A and C. The rule doesn't really add. Because there it says unlisted, right? Right. The statute says unlisted. You know, I think grammatically speaking, I would say the clause begins, which is not endangered or threatened, means the species must not be endangered or threatened. Is there some ambiguity there possibly? That is certainly the way the service has always understood. That regulation is the way the service has applied the regulation consistently for the last 50 years. And also I think that the regulation needs to be read in parodies. I thought that you would point to subparagraph A, so EA, which says a species which has been listed pursuant to such section and the overall structure of the act where this whole subparagraph E, similarity of appearance cases, appears kind of after and assumes, the way I read it anyway, is that it assumes that you've already done the listing and the criteria for whether you're going to put something on one of the two lists, either the threatened list or the endangered list. That's described in subparagraph A. And then other procedural matters are in subparagraph B, and including what to do if you're going to move things from one list to another. And then C describes like the lists themselves and the significance of being on the list. And then D is the regulations that you're supposed to pass and enact for the things that are on the list. And then you get to E, which is, well, if you have some things that aren't on either list, and it speaks as if like the lists are already existing, something that has been listed, you can treat it as if it is on a list. Yes. Regulations are defined the same way. When they say endangered or threatened in the regulations, those words are defined in the regulations to say things that have been designated on a list. Yes, Your Honor, that's how we read the statute. And I agree with Your Honor that the inapplicability of 4E to listed species is most clearly presented in paragraphs A and C of 4E. But to Your Honor's point, I think one way of thinking of 4E is it's an exception. It allows the service under certain circumstances to treat an unlisted species as endangered or threatened, even though it is not. Right? So it doesn't have any applicability to a species that is already listed, because the service has its authorities under Section 9 to institute conservation measures for a species that's listed. It doesn't need 4E authority to do those things. Okay. I take your position to be that it's not really – nothing is lost by reading the statute to me not listed at all. And once something is listed pursuant to 4A as threatened, the reason nothing is gained by then considering the treated as to raise it to effectively treat it as endangered is because once you have a species listed as threatened, all the enforcement authority or the protective authority that accompanies an endangerment listing is already available to the Secretary. Is that right? That is correct, Your Honor. That is your position? That is our position, yes. And where – and is that because – is that pursuant to 4D? Yes, Your Honor. But I thought you say that a species that is treated as is not listed. A species that is treated as is not listed. That is correct.  Listed is pursuant to 4A, but if it's treated as pursuant to 4E, it's not a listed species.  But then 4D – the authority in 4D is triggered by whenever any species is listed as a threatened species, the Secretary may by regulation prohibit any act, blah, blah, blah, blah. But you're reading D to allow – right, because this was listed as – Correct, correct, yes. Okay. Sorry about that. That's okay. So – and I guess I'm having a little bit of trouble under – given the discretion that the service has under the statute, even with respect to a species that is treated as endangered, why does the service fight this interpretation, which is not requiring treatment as endangered, but only allowing it? What's the downside? Like, I'm having a little trouble with both sides, given the sort of the discretion and the –  Understandably so. So it creates an additional level of analysis that the service would have to perform in any case when it's considering the listing status of species that resemble each other. And remember, it's not just species like the macaws that the individual animals closely resemble each other. It's also in circumstances where animal parts resemble each other closely. And so the service would then be required to undertake this analysis in a lot of cases, adding to its already voluminous workload and, frankly, the backlog of work that it has in processing listing determinations. But I guess that seems sort of circular to me, because if they really do look alike, you're going to be wanting to consider that anyway, even if it's only at the threatened level. You know, if you've got bones and feathers and – I mean, you've got to address it, but you're just saying you don't have to have a rulemaking on that. You don't have to have a rulemaking on it. You don't have to address similarity separately. So in this case, the service certainly considered what measures were necessary to conserve both the northern subspecies and the northern distinct population segment and considered what commerce measures in particular were necessary when it issued the 4D rule. But then it didn't then go on and do an additional layer of analysis to say, even though we think based on our discretion under 4D that that's sufficient to protect the species, should we also consider maybe treating the northern DPS as an endangered species as well? And that's what the district court required the service to do in this case. But there's already a rule being promulgated pursuant to 4D to say why you're not going all the way to the full suite of treated as endangered, right? Yes, yes. There's already a rule going out. So a sentence that says, you know, we don't think this – and this is also the reason why we're not doing a lookalike upgrade. Right. It's just I'm not sure I see the burden. It's perhaps not an extensive burden, Your Honor, but it is a marginal additional burden. And we also think it is important to clarify, as Judge Wilkins was explaining, sort of the structure of the act and how it works, right? And so once the service has determined that a species should be listed as threatened, the service proceeds to consider a 4D rule. And that's the appropriate forum and framework for the species – I'm sorry, for the service to consider that species. And 4E is an additional step that the service applies to other species that do not meet the criteria for listing. And it helps to keep those categories distinct and avoid the confusion that sometimes occurs. I think it's even occurred a little bit in the briefing in this case over whether a species treated under 4E is actually listed. It's just very odd to think that if in this case, for example, 4A had not been applied to determine the status, the listing status of the southern subspecies' northern DPS, that it would have been open to the service based on the acknowledged lookalike characteristics to say – to treat it as either threatened or endangered. But just because of the sequencing of the consideration, I guess maybe this – Judge Wilkins' question has in it the answer to this. Just because the service said, well, this is actually threatened under 4A, that you no longer have even the authority to consider just putting it as endangered and having a uniform treatment. Maybe that's easier to implement at the border. I just don't – I think the answer does lie in the order of operations, Your Honor, and the way that the service structures its listing determinations. But I would also say once a species is listed as threatened, Section 4D expressly gives the service the power to apply any conservation measures that are authorized by Section 9 to that species. So the service loses no authority to protect the 4D species, the threatened species. We think that in protecting the threatened species, it will necessarily protect a similarly appearing endangered species since they're facing the same threat by definition if this even comes into play. If a species is – go with the Friends of Animals analysis for a moment if their way of reading the statute is correct. It's still a discretionary choice on the part of Fish and Wildlife. In the September 9th publication of the Federal Register in compliance with the remand to the agency, the Fish and Wildlife Service says in most cases, treating a species as endangered under 4E where it is threatened has been determined to be threatened under 4A would actually provide it with fewer protections because a species treated under 4B as either endangered or threatened doesn't receive the critical habitat protection, the recovery planning, and the consultation with federal agencies when they act in ways that could affect species that are triggered by a listing under 4A. And that – I found that both compelling and confusing because presumably treatment as endangered under 4E could layer on top of listing as threatened under 4A, no? I mean, you would still have the consultation and habitat designation authorities. It wouldn't go away because one is a listing and the other is treatment as. Right, so I think the Service's Federal Register notice needs to be understood as applying its interpretation, its current interpretation of 4E, that 4E wouldn't authorize that. And I think if this court were to hold that the Service is wrong, I think the Service would – I think that question is open as to whether those additional protections could be layered. I read this Federal Register notice quite explicitly to be explaining why the Service's interpretation is better and saying that if – that under Friends of Animals interpretation, it would be problematic because a threatened species would have fewer protections. But I just don't – I don't see that. I think that certainly that result is not compelled by the text of the statute. I think what the Service is referring to is its current practice for how it approaches 4E species. And if it were to continue with its current practice with 4E species, that would be the result. I think if it turns out the Service is wrong about what 4E means and that the Service can, in fact, treat a list of threatened species as endangered, then I think the Service would probably look at those authorities and practices again. But that's another reason why the Service would prefer not to have that additional authority because the system as it's in place now has worked well for 50 years. It also hasn't really raised this precise consideration. It has not. That's correct. That's correct. So just to help me out here, what is the difference between – the practical difference in terms of the tools available or burdens imposed on the Service between treating threatened 4A listing and an endangered 4E treated as? Okay. So if a species is listed as threatened under 4A, the Service may apply any of the conservation measures that apply to – that automatically apply to listed endangered species. And all of the other protections that apply to all listed species, such as the federal consultation requirements, apply to that species. If the Service treats a species as endangered under 4E, then the Service has discretion, and 4E is clear on this, that the Section 9 prohibitions don't automatically apply. It says the Secretary, to the extent he deems advisable by regulation or commerce, can apply any of the protections that would apply to an endangered species. But that species, which is treated under 4E because it's not a listed species, does not benefit from other provisions of the Act, such as the federal consultation requirement, the critical habitat requirements, et cetera. They don't automatically benefit, but if they had an underlying 4A designation as threatened, they would be able to – they may – the Secretary may apply those. That certainly is a plausible reading of the statute that I haven't taken a position on in this case, but yes. Yeah. And there is this – you take the position that treated as is not a listing. Yes. Is there any kind of practical challenge? I mean, I assume the lists are actually lists, and that if you're at the border, you have a list. You have the endangered list. You have the threatened list. You have instructions how to – or probably it's now all searchable wonderfully on computer. Is there any obstacle to implementing the scheme that I'm imagining? And I've been helpful in explaining your position on it, where you have a 4A threatened listing and a 4E endangered treated as. Is that, like, somehow a morass? Or what is the practical response to why that would be problematic? I don't know that it would characterize as a morass, Your Honor, but I think it would potentially create additional confusion because then you're going to have a circumstance in which you have species that are listed as threatened or endangered, species that are treated as threatened or endangered that don't ordinarily receive these additional protections. But some of them do because they're also listed as threatened or endangered. So instead of having, you know, three categories, now we have, what would that be, five categories. The Endangered Species Act is already very complicated. It poses compliance difficulties for the public. It imposes compliance difficulties for other federal agencies that aren't expert in its requirements. And the simpler that the service can make things, the more effective we think the implementation of the act will be. But you already basically have bespoke rules for every species unless you're just treating everything as the max, right? Yes, there are bespoke rules for some species and there are default rules for other listed threatened species, yeah. Yes. What if we were to conclude that this argument specifically that the service has the authority to treat a threatened species as endangered under Section 4E, what if we conclude that that argument was not made by Friends nor any other commenter during the rulemaking? Does that affect the jurisdiction of either the district court or us in hearing this case? It doesn't affect your jurisdiction, Your Honor. I mean, certainly the court could reverse on the ground that the issue wasn't presented to the agency in a timely manner. That's not an argument that we raised in the district court. And for that reason, we thought it would be inappropriate to seek reversal on that ground in this court. But certainly we think that the procedural default is potentially another reason why the decision should be reversed. But it goes to the merits, not the court's jurisdiction. All right. Thank you. We'll give a couple of minutes on the fly. Mr. Hernick. May it please the Court. My name is Stephen Hernick and I represent Pele Friends of Animals. In this case, the agency is asking this court to bless a very strained interpretation of the statute that is both contrary to the plain language of the ESA and clearly contrary to the purpose of the ESA, which is to provide protections for threatened and endangered species. But for a number of reasons, this court should never even reach the merits of that question. I'd like to ask where I left off with your friend on the other side. Where in the comments did Friends of Animals, your client, make this argument? Yeah, I can't point to anything in the record before this court, Your Honor, about that. But to answer your question, it's not an issue that the agency raised in the district court. It's not an argument that the agency raised before this court. It's not a jurisdictional hurdle to this court. To the extent the agency ever wanted to raise that argument, it failed to do so and therefore it waived that argument. And that is an argument, the administrative exhaustion that can be waived. That's not a jurisdictional hurdle to this court's consideration. Okay. Let's go into the merits. The way that I read this statute overall, or basically 1531 et sec, is that list is a term of art. This is all about whether you make one of the two lists, the threatened list or the endangered list. And so whether you say not listed, unlisted, has not been listed, doesn't matter how you say it. It's all about, like, are you on the list or not? And if you think about it that way, to me, this seems like an easy case. It's unambiguous that it goes against you because it says any species, but it says even though it is not listed. That phrase is modifying and describing what you mean by any species. And then you go on to subparagraph A, and it says a species that closely resembles in appearance a species which has been listed. And so when you combine that with the fact that E appears to be dealing with a process that kind of happens after the listing because all of this stuff that's in the preceding sections are leading up to the decision of listing and then what happens with promulgating regulations once something is listed, that none of that comports with the best reading of the statute being what you say that it is. So tell me why I'm wrong. Okay, respectfully, I do disagree, Your Honor. Our view and the district's court view is that Section E is a broad grant of discretion to the service in this case. Congress chose to use the phrase any species. And in this case, the agency has not been able to come up with any plausible meaning of what that terminology could mean. Well, you look at it by reading the rest of the sentence. Sure, you have to read the rest. Even though it is not listed, it means any species. That's what it refers to, right? You know, the language is treat any species as an endangered species or threatened species, even though it is not listed pursuant to Section 4 of the statute. It means species, right? It is referring to species, but the even though language is not imposing a limiting condition on this. The service wants to read the even though language, wants to substitute only if for these words. And that's simply not what the plain meaning of that language is. And the service hasn't cited any authority when and even though clause has been read in a way such as this. But you read the rest of the sentence. It says treat any species as an endangered or threatened species. So it is setting up a construct where you treat it as if it is something else, even though it is not one of those two things. That's what this means. Respectfully, I disagree, Your Honor. It's giving the service broad discretion to treat any species as endangered or threatened, even for those species that are not listed pursuant to Section 4A. And this is a unique provision of the ESA. It's the only provision in the entire statute that gives the service any discretion to list or treat a species as threatened or endangered that doesn't otherwise qualify under the enumerated factors under Section 4A. So it's not at all surprising. What does 4D do? 4D gives the service discretion about what regulations should be applied to listed threatened species. So when the service lists an endangered species, the protective regulations of the Endangered Species Act automatically applies to endangered species. And doesn't that give the service the authority in its discretion to treat something listed as threatened under the same regulatory requirements as if it were listed as endangered? It absolutely does give the service that discretion, Your Honor. Doesn't that then end your case? No, because oftentimes the service doesn't exercise that discretion. That means that this language is superfluous. I disagree that it's superfluous. What's the point of it if you can do the same thing under E? Sure, I'll explain why, Judge Wilkins. The language is not superfluous because Section 4D is providing the protections, it's for the protection of the listed threatened species. 4E is not intended to protect the lookalike species. It's pretended to protect the already listed species from similar-looking species being laundered, from that endangered species being laundered as the similar-looking species that has fewer protections. So there's a case, and it's not a far-flung hypothetical because it is essentially the facts presented by this case. Why couldn't under 4D the service say, we've only listed this as threatened, but because it's similar in appearance to this other species that we've listed as endangered, and we are fearful that that could, the disparity of the listing could put the endangered, the species listed as endangered in jeopardy. Use that as a reason to apply 4D to regulate the threatened species as if it were endangered. What would keep the service from doing that? I'm not sure if that would be an appropriate use of 4D. What in 4D prohibits the service from doing that? 4D is directed towards that particular species. So 4D doesn't give the service discretion to... It says, as he deems necessary and advisable for the conservation of such species, and may my regulation prohibit with respect to any threatened species, any act prohibited under, et cetera, et cetera, with respect to endangered species. So where would that prohibit or be arbitrary and capricious for the service to use a similarity of appearance analysis, so to speak, to do that? Well, the language such species, I think, is clearly applying to the listed threatened species in this case. So if the service determined that, in this case, the endangered northern subspecies of scarlet macaws, there was a real threat to that northern subspecies because of people potentially laundering it as the northern DPS, even if that wasn't a threat to the northern DPS itself and didn't warrant protective regulations for the northern DPS, 4D would allow the service to provide that greater protection to the northern subspecies. And they have that protection. They have the authority under their interpretation of the statute and the regulation to apply the additional protections associated with or required in the situation of an endangerment listing to the northern DPS of the southern subspecies that is listed only as threatened. They have the authority to do that. Your point is that they, sort of as a remedial matter, your point is that, I mean, what do you get from your interpretation other than more explanation and rulemaking? That's the only thing at stake here, right, is more explanation and rulemaking. There's not a difference between the authorities or obligations of the service under either interpretation. The service clearly has, you know, a great deal of discretion under these provisions of the ESA. What is at issue here is the agency pressing on this court to, you know, to read this language much more broadly and say that this provision actually forecloses, completely prohibits the service from applying it in this way. From treating the species listed as threatened under 4A as treating it as endangered, as a protective matter for the northern subspecies, but the only difference in the real world in terms of authority or obligation on the Fish and Wildlife Service is that where they've disavowed the authority to do that. You're saying, no, you have the authority to reach the same practical end in terms of protections through 4E treated as elevating 4A threatened to 4E endangered. You have the authority to make that move. And the only thing that rides on that from your briefing is that if they have the authority to do that, they have to explain why they're not doing that. Perhaps it would lead to the same conclusion, Your Honor, but I don't think it's a foregone conclusion that it would, and the statute shouldn't be read to assume that the same conclusion would result in all instances. But if they're thinking about lookalikes, which they clearly were thinking about with macaws because of how they dealt with the southern DPS of the southern subspecies, which was treated as, they're thinking about lookalikes. They acknowledge that all of these different population segments are lookalikes. They're thinking about protecting habitat. They're thinking about agency action obligations. They're thinking about importation and commerce, and they're actually making a set of species-specific rules about which protections apply. So they're doing all that in a rulemaking that is more bespoke than the defaults, treat everything as endangered.  What more would you get? I'm just not really following why they're fighting it, and I'm not really following why you're fighting it, given that the discretion to do the things that you want seems to be there even under their interpretation, and the latitude not to do what they don't want seems almost completely to be available under your interpretation. Yeah, I think the agency has kind of made clear in this case it's not going to exercise this discretion. Because it's already explained in a very nuanced way what it wants to do, and could come out the same way. Potentially. Could. Could. Would have the authority to. Potentially. No, would have the authority to. Oh, they clearly— They would have the authority to, whether they would or not, and so that's what I'm— I'm trying to understand what's at stake from your perspective. If they were determined to come out in substance, in terms of the protections, the same way that they've come out under their reading, under your reading, they could, right, if they were determined to do that. They potentially could. I don't dispute that they have discretion. And the nudge that you think that your reading provides, that their reading lacks, is what? You know, the service is pressing this interpretation that forever forecloses it from applying these protections. But no, that's not right. It has already the authority with respect to species listed as threatened. Under 4D. Under 4A. It has the authority under 4D.  To go all the way, to pedal to the metal, and do exactly what you would prefer. It certainly could. It has that authority. It does. And under your interpretation, it would have the authority to not use the lookalike power under 4E to treat a threatened species as endangered for purposes of protecting the northern subspecies. It would have the authority to choose not to do that. Right? Yes. The service would still have discretion to choose not to, but they would at least have the option to. But it doesn't get them anything different. Potentially it could. What does it get them that's different? Potentially it could give them a different nudge. Like I need clarity.  Because here, the northern. I'm not just frustrated with you. This is very complicated. I understand, Your Honor. Because here, the northern subspecies is listed as endangered. The service believes it's endangered. The northern DPS is listed as threatened, has this protective regulation that the service has determined is appropriate for the protection of the northern DPS. But the service hasn't determined that, you know, whether that protective regulation is necessarily protective of the northern subspecies with respect. With respect to lookalike problems. To potential laundering issues. And there's just this, you know, and you touched on it earlier, Judge Pillard. There's this just very strange, absurd result that happens where if a species is unlisted, the service does not believe it requires protection under the Endangered Species Act. They can treat it as threatened, endangered pursuant to 4E. But if a species is listed as threatened, they're foreclosed from doing so. And that just makes no sense. Isn't the answer in 4A, can you just turn to 4A for a second? I don't know if you have the language in front of you. 4A, 1B. These are the factors that are supposed to be considered in determining whether a species is listed as endangered or threatened. And D says the inadequacy of existing regulatory mechanisms. Couldn't the service say ordinarily we have five criteria that you need to meet before we list you as endangered? If you meet three of them, we list you as threatened. If you don't make three, then we don't list you at all. And they say, well, this one meets three, so ordinarily it would be threatened. But it looks a lot like, and we have this laundering problem, and we're worried about whether this listing as threatened would impact this other species that looks very similar, that we are listing as endangered. So maybe we should just go ahead and list this other one as endangered also instead of as threatened. Why couldn't the service do that relying on 4A, 1D? Because 4A is very specific to the species that is being listed, and 4E is there for this other lookalike species looking back. So what does inadequacy of existing regulatory mechanisms mean? I think we're talking about the same thing, Your Honor. Clearly it's the inadequacy of existing laws protecting this listed species under 4A. I just don't read that provision as providing this authority to regulate trade in other species. That's what 4E does for these lookalike species. And isn't it also, if it's just because of lookalike, you know, which could be described as existing regulatory mechanisms, although you've just said no, but the treatment as is generally more tailored. It has to do with commerce and importation. It doesn't carry with it. Like, if I were the Fish and Wildlife Service and trying not to overburden the already taxed resources of the service, I wouldn't want to gratuitously do, I wouldn't want to use the 4A authority to deal with a lookalike problem, because that carries a lot of burdens that have to do with actually the, like, habitat and recovery of species that you would need for a species that is not itself suffering, but that's just a lookalike kind of proxy. So you want to get the interpretation of 4E to do that work. Because it's like a leaner authority. It's consistent with the statute. And the service would kind of have to tie itself into knots to ignore 4E to try and do the same thing through 4A. And I just, I do think that would be vulnerable to challenge. You know, I see I am over time. I do, you know, just want to briefly point the court's attention to something on the untimeliness argument. That's been briefed extensively. I didn't intend to, you know, get to it in detail. On page 7 of the joint appendix, the last docket entry from the district court, the district court denied the agency's motion for a stay of the explanation of the provided pending appeal. In assessing why the agency was unlikely to succeed on the merits of this appeal, the court writes in here, and since then plaintiff has developed additional arguments why the appeal should fail. The only additional arguments that we had raised in briefing before that district court were ripeness and untimeliness. So the district court, this clearly suggests the district court believes that its July order was the order that triggered the agency's time to appeal. If it didn't believe that, it wouldn't have written this sentence. And what the district court's intent was in issuing the July order with an accompanying 63-page memorandum opinion is controlling as far as whether that is the appropriate order that started the clock for the agency to appeal. All right. Thank you. Thank you very much. Mr. Anderson, you have two minutes. Just briefly, Your Honors. I'm sorry. On Mr. Hernick's last point, I don't know what the district court thinks of Friend's timeliness arguments. Acknowledging that it made arguments is not the same as endorsing those arguments. We did not brief the adequacy of those arguments in our motion to stay, so I think that that carries no weight. Other than that, I have nothing further unless Your Honors have additional questions. You may have already answered this, but does Section 4D allow the service to implement protective regulations for the sake of preventing a lookalike problem, or does only Section 4E do that? The service has historically interpreted Section 4D to allow it to accord a listed threatened species any of the Section 9 prohibitions for any rational reason. So the second sentence, the first sentence says, of 4D, says that the secretary may prescribe measures that are necessary and appropriate. And the second sentence says, without qualification, that the secretary may apply any of the measures in Section 9. This court upheld that determination under Chevron. I apologize. I don't have the citation in front of me. But if it's not a listed species, but a species that is going to be treated as. Right. So like the situation of the southern DPS. Is there regulatory authority with respect to the southern subspecies and southern DPS to regulate under 4D? So once the southern subspecies is treated as threatened, the service applies the 4D rule to. That's how that works, yes. Okay, so even though it's not listed. Even though it's not listed because the 4E says that the secretary may, as he deems advisable by regulation of commerce, or taking the species as threatened. The secretary reads that and authorities allowing it to apply the 4D rule for the threatened species to the lookalike species. Is there a regulation that speaks to this, or is this just the practice? It's a good question, your honor. I'm not sure I will find that out and inform the court. Thank you. Thank you.
judges: Henderson; Pillard; Wilkins